Nos. 2--05--1073 & 2--06--0036 cons.          filed: 10/19/06

_____

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

_____

| | | |
|---|---|---|
| JEFFREY WERDERMAN and TINA WERDERMAN, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiffs-Appellants and Cross-Appellees, | ) ) ) ) | |
| v. | ) ) | No. 03--CH--1258 |
| LIBERTY VENTURES, LLC, BRIAN MARSHALL, EUGENE ROSENDALE, and RON MICK, d/b/a The Hometeam Inspection Service, | ) ) ) ) ) | |
| Defendants-Appellees | ) ) | |
| (Naperville Professionals, Inc., d/b/a Re/Max Professionals Select, Matthew Bailey, Christian Chase, and Walter Chase, Defendants-Appellees and Cross-Appellants). | ) ) ) ) | Honorable Bonnie M. Wheaton, Judge, Presiding. |

_____

_____

| | | |
|---|---|---|
| JEFFREY WERDERMAN and TINA WERDERMAN, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiffs-Appellants, | ) ) ) | |
| v. | ) ) | No. 03--CH--1258 |
| LIBERTY VENTURES, LLC, BRIAN MARSHALL, EUGENE ROSENDALE, RON MICK, d/b/a The Hometeam Inspection Service, NAPERVILLE PROFESSIONALS, INC., d/b/a Re/Max Professionals Select, MATTHEW BAILEY, CHRISTIAN CHASE, | ) ) ) ) ) ) | |

and WALTER CHASE, ) Honorable
) Bonnie M. Wheaton,
Defendants-Appellees. ) Judge, Presiding.

_____

JUSTICE O'MALLEY delivered the opinion of the court:

Plaintiffs, Jeffrey and Tina Werderman, purchased a house that, as soon as they moved in, exhibited an unsafe and unhealthy mold infestation, the effects of which forced plaintiffs almost immediately to move out of the house. Plaintiffs sued defendants, Liberty Ventures, LLC (Liberty Ventures), Brian Marshall and Eugene Rosendale (collectively, the Liberty Ventures defendants); Ron Mick, d/b/a The Hometeam Inspection Service (Hometeam); Naperville Professionals, Inc., d/b/a Re/Max Professionals Select (Re/Max), Matthew Bailey, Christian Chase, and Walter Chase (collectively, the Re/Max defendants), alleging that defendants had defrauded them by marketing and selling to them a home that had water damage and mold infestation. Following a joint bench and jury trial, the jury returned a general verdict in favor of plaintiffs on their claims at law, including common-law fraud, breach of fiduciary duty, civil conspiracy, breach of contract, negligent misrepresentation, and professional negligence, against defendants Re/Max, Liberty Ventures, and Hometeam. The trial court returned a judgment in favor of defendants Re/Max and Liberty Ventures and against plaintiffs on plaintiffs' claims under the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/10a, 10b (West 2002)) and the Residential Real Property Disclosure Act (Disclosure Act) (765 ILCS 77/55 (West 2002)). On appeal in case No. 2--05--1073, plaintiffs contend that the trial court's judgment on their statutory claims cannot stand in light of the jury's verdict on their common-law claim. On cross-appeal in that case, the Re/Max defendants contend that the trial court erred by allowing plaintiffs to amend their complaint to allege

punitive damages and that the jury verdict awarding compensatory and punitive damages awards was against the manifest weight of the evidence. We affirm. On appeal in case No. 2--06--0036, plaintiffs contend that the trial court erroneously dismissed their petition for costs due to lack of jurisdiction. We reverse and remand.

As an initial matter, this opinion involves issues of first impression as well as issues that are not precedential. Accordingly, we have denominated portions of the opinion nonpublishable under Supreme Court Rule 23 (166 Ill. 2d R. 23), including most of the detailed recitation of facts. In order to provide context for the publishable portion of this opinion, we provide a brief summary of the salient facts.

These consolidated appeals arise out of several real estate transactions involving a three-bedroom, two-bathroom, ranch home located at Boat Lane in Oswego, Illinois. Late in 2001, the home had been foreclosed by the Department of Veterans Affairs (VA) and, while it stood vacant, had experienced flooding and water filtration. The VA cleaned up the property by removing debris, but did not check for mold or take steps to remedy any potential mold infestation. The VA offered the property for sale "as is." During that time, neighbors observed water damage and mold damage to the property. The VA eventually sold the home "as is" to the Re/Max defendants.

The Re/Max defendants offered easily repaired properties for sale to investors. Their business plan was to purchase such a property and immediately sell it to an investor. The Re/Max defendants would suggest persons who could accomplish the repairs, list and sell the property for the investor, and earn a commission on the sale. The investor would earn profit through flipping the property after completing the repairs.

Before purchasing the Boat Lane property, the Re/Max defendants, along with the Liberty Ventures defendants, inspected the property several times. The Liberty Ventures defendants observed that the floor had been warped and buckled as a result of water infiltration. The Liberty Ventures defendants testified at trial that they believed the water damage was due to a burst pipe. The Re/Max defendants consistently denied that, at any time relevant, they had observed any water damage or mold infestation. Immediately upon their purchase, the Re/Max defendants sold the property to the Liberty Ventures defendants. The Liberty Ventures defendants repaired the property and painted it. The Re/Max defendants listed the property for sale. While listed with the Re/Max defendants, interested realtors and buyers who toured the property observed what they believed to be mold in the basement and an overwhelming moldy or musty smell in the house. One realtor called Walter Chase and explained that a client's lowball offer was the result of mold. Chase replied that the client did not know what he was talking about and that everyone knows that bleach and water will clean up mold. During his testimony, Chase denied that this conversation occurred. Ultimately, plaintiffs purchased the Boat Lane property.

Before completing the purchase, plaintiffs toured the property and had it inspected. Plaintiffs did not discover mold or other damage. Plaintiffs were not informed that water damage had been repaired in the property. After they moved in, plaintiffs discovered extensive mold infestation in the property and experienced adverse health effects as a result of the presence of mold. Plaintiffs sued defendants, alleging common-law fraud and consumer fraud under the Consumer Fraud Act, based on defendants' failure to disclose the presence of water damage and mold in the property.

Following the presentation of evidence, the jury returned a general verdict in favor of plaintiffs, and against Re/Max, Liberty Ventures, and Hometeam, on all of the claims submitted to the jury, including common-law fraud, breach of fiduciary duty, civil conspiracy, breach of contract, negligent misrepresentation, and professional negligence. The jury awarded plaintiffs $71,545 in compensatory damages and awarded $69,175 in punitive damages against Re/Max only. The jury hand-wrote its allocation of compensatory damages on the verdict form, attributing $9,100 to Liberty Ventures, $62,160 to Re/Max, and $285 to Hometeam. On July 22, 2005, the court entered judgment on the jury's verdict, and the judgment order was filed on July 26, 2005.

On August 2, 2005, the trial court entered judgment in favor of the Re/Max defendants and the Liberty Ventures defendants and against plaintiffs on plaintiffs' statutory claims under the Consumer Fraud Act and the Disclosure Act. The trial court's order was entered nunc pro tunc to July 25, 2005.[1] The parties filed posttrial motions, which, on

---

[1] We are puzzled by the trial court's decision to employ a nunc pro tunc order here.

Nunc pro tunc orders are used to correct clerical errors in written orders or to otherwise conform the orders to the court's actual judgment; however, a nunc pro tunc order cannot be used to alter the court's judgment. In re Marriage of Morreale, 351 Ill. App. 3d 238, 241 (2004); In re Jessie B., 327 Ill. App. 3d 1084, 1089 (2002). Here, the trial court rendered its judgment on plaintiffs' statutory claims on August 2, 2005. It was improper to backdate the judgment via a nunc pro tunc order; further, we see no reason to have done so. As no issue arises from the trial court's action, we address it no further.

August 30, 2005 (the Re/Max defendants' motion), and September 22, 2005 (plaintiffs' and the Liberty Ventures defendants' motions), were denied. Plaintiffs' timely appeals and the Re/Max defendants' timely cross-appeal in case No. 2--05--1073 followed.

We turn first to the issues raised in plaintiffs' appeals. In case No. 2--05--1073, plaintiffs contend that, in light of the jury's resolution of their common-law fraud claim against Re/Max, Liberty Ventures, and Hometeam, the trial court's judgment on the statutory claim under the Consumer Fraud Act is inconsistent and must be brought into accord with the jury's verdict. We note that this is the only ground on which plaintiffs challenge the trial court's judgment. Plaintiffs do not raise an alternative argument that the trial court's judgment on the statutory claim was against the manifest weight of the evidence.

We begin with plaintiffs' arguments in case No. 2--05--1073. Plaintiffs first argue that the inconsistency between the results of the bench trial and the jury trial must be resolved. Plaintiffs note that the requirements to prevail in an action under the Consumer Fraud Act are less demanding than those necessary to prevail on a common-law fraud claim. They then argue that, because the jury found against Re/Max, Liberty Ventures, and Hometeam on the more stringent claim of common-law fraud, the trial court's judgment on the statutory claim must give way and be brought into line with the jury's verdict. Plaintiffs base their argument ultimately on the concept that the jury verdict acts as a collateral estoppel of the trial court to come to a different result. Additionally, plaintiffs cite to several cases, from both Illinois and federal courts, that plaintiffs assert support their position. Plaintiffs also invoke the sanctity of the right to a jury trial on their common-law claims as a further reason that the trial court's judgment cannot stand.

Plaintiffs present the interesting issue of when and to what extent the jury's verdict must bind the trial court's judgment on common factual issues when a joint bench and jury trial is held.  Here, plaintiffs litigated a common-law fraud claim and a statutory fraud claim under the Consumer Fraud Act, both of which arose out of the same transaction.  Generally, proving a common-law fraud claim also results in proving a consumer-fraud claim based on the same evidence.  E.g., Washington Courte Condominium Association-Four v. Washington-Golf Corp., 267 Ill. App. 3d 790, 823-24 (1994).  Here, however, the jury found that Re/Max, Liberty Ventures, and Hometeam had committed common-law fraud but the trial court did not rule that Re/Max or Liberty Ventures had committed consumer fraud.  Plaintiffs contend that such a result cannot be allowed to stand.  We disagree.

There is no right to a jury trial in deciding a consumer-fraud claim.  Martin v. Heinold Commodities, Inc., 163 Ill. 2d 33, 76 (1994).  Plaintiffs appear to conflate the right to a jury under the federal constitution with the right to a jury under the Illinois Constitution.  Martin holds that the rights are different and that the right under the Illinois Constitution is somewhat more limited than the federal right.  Martin, 163 Ill. 2d at 72-73.  The right to a jury trial under the Illinois Constitution is not guaranteed in any action nonexistent at common-law, even if the action is legal in nature; rather, it continues in all cases where the right existed at common-law at the time the federal bill of rights was adopted.  Martin, 163 Ill. 2d at 72-73.  The legislature may, however, create an action unknown at common-law and provide a right to a jury trial.  Martin, 163 Ill. 2d at 73-74.  On the other hand, the right to a jury trial under the federal constitution has been interpreted to extend beyond the common-law forms recognized at the time the Bill of Rights was adopted, to all actions at

law.  Martin, 163 Ill. 2d at 73.  Thus, while plaintiffs' claim that the jury's verdict should control the trial court's decision on common factual issues may find support in the federal law, it must be remembered that such support is derived from an entirely different right that does not translate to Illinois law.  Ultimately, as discussed in more detail below, plaintiffs' argument remains unavailing.

Martin goes another step.  In addition to holding that the Consumer Fraud Act affords no right to a jury trial, it also holds that the legislature intended that an action under the Consumer Fraud Act be tried without a jury.  Martin, 163 Ill. 2d at 76.  If plaintiffs' position were granted and the jury's verdict controlled the disposition of common factual issues, then plaintiffs would be receiving a de facto jury trial, at least as to the common factual issues.  This would violate the legislative intent behind the Consumer Fraud Act (see Martin, 163 Ill. 2d at 76) and result in judicial legislation.  We may not add language or a provision to, or add exceptions, limitations, or conditions, or otherwise alter a statute so as to depart from the plain meaning of the language employed in the statute.  Hunter v. Southworth Products Corp., 333 Ill. App. 3d 158, 164-65 (2002); Buckellew v. Board of Education of Georgetown-Ridge Farm Community Unit School District No. 4, 215 Ill. App. 3d 506, 511 (1991).  The Consumer Fraud Act does not confer the right to a jury trial. Allowing the jury's verdict to control would be to write into the Consumer Fraud Act the right to a jury trial where there is an accompanying claim of common-law fraud.  That we may not do, and plaintiffs' argument must fail.

We next consider the specifics of plaintiffs' arguments in support of letting the jury's verdict govern the trial court's judgment.  We turn to the foundation of plaintiffs' contention-- that the doctrine of collateral estoppel binds the trial court to follow the jury's verdict.

Plaintiffs argue that, where a jury claim exists along with a nonjury claim, the jury's factual determination reflected in its verdict on issues common to both claims will be binding on the trial court in rendering a decision on the nonjury claim. According to plaintiffs, trying the claim to the jury collaterally estops the trial court from independently considering the common factual issues, especially where the jury claim is resolved first. Plaintiffs contend that here, because the jury reached a verdict upon which the trial court entered judgment before the trial court ruled on their statutory claim, collateral estoppel should apply to preclude the trial court's conflicting judgment. We disagree.

Collateral estoppel "is an equitable doctrine of judicial origin created to prevent relitigation of previously adjudicated claims and is founded in principles of judicial economy." Ballweg v. City of Springfield, 114 Ill. 2d 107, 113 (1986). The elements necessary to the application of collateral estoppel are:

"(1) whether the issue decided in the prior adjudication is identical with the one presented in the case in question; (2) whether there had been a final judgment on the merits; and (3) whether the party against whom estoppel is asserted is a party or in privity with a party to the prior adjudication." Ballweg, 114 Ill. 2d at 113.

Finality, for purposes of the application of collateral estoppel, requires that the "potential for appellate review must have been exhausted." Ballweg, 114 Ill. 2d at 113.

Here, obviously, the jury's verdict is nonfinal because it is being reviewed on appeal. Thus, for the purposes of establishing collateral estoppel, there is no final judgment on the merits with respect to common-law fraud. Further, logically, because the doctrine is rooted in the idea of preventing relitigation of a claim, the fact that the trial court is considering the same evidence as the jury at the same time the jury is hearing it does not implicate the

doctrine of collateral estoppel. Instead, the trial court is fulfilling its function as a concurrent finder of fact, and only one litigation of the matter has occurred. Definitionally, therefore, plaintiffs run into trouble because the trial court's judgment is certainly not a relitigation of any of the issues; at most it is a reconsideration of the issues presented jointly to the trial court and to the jury simultaneously. For these reasons, collateral estoppel is inapplicable to the case at hand and cannot bind the trial court to follow the jury's factual determinations on common factual issues.

In addition to the failure of collateral estoppel as a mechanism to overturn the trial court's judgment on plaintiffs' statutory claim, plaintiffs' remaining arguments against the trial court's judgment are also unpersuasive. Plaintiffs cite a number of cases, from federal and state appellate courts, that they assert are supportive of their argument. We consider first the federal authority.

It is well settled that federal decisions are not binding on Illinois state courts. Ardon Electric Co. v. Winterset Construction, Inc., 354 Ill. App. 3d 28, 38 (2004). Despite the nonbinding nature of federal decisions, they can be considered to be persuasive authority, and they may be followed if the state court believes the federal analysis to be reasonable and logical. Ardon Electric, 354 Ill. App. 3d at 38. We now turn to the four federal cases specifically cited by plaintiffs.

Three of the cases cited by plaintiffs are unsatisfactory because they turn on the particular holdings of the Seventh Circuit Court of Appeals (and indeed, the federal courts in general) regarding the interaction between Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000a (1986)) and section 1981 of the Civil Rights Act of 1866 (42 U.S.C. §1981 (1986)). In McKnight v. General Motors Corp., 908 F.2d 104, 113 (7th Cir. 1990), the court

held that the jury's factual findings on the plaintiff's section 1981 claim bound the trial court to follow those findings on the plaintiff's Title VII claim. This holding, however, was premised on the fact that "the rule that makes the jury's verdict on a section 1981 claim dispositive of any common factual issues presented by the plaintiff's Title VII claim is well established in this circuit." McKnight, 908 F.2d at 113. McKnight is distinguishable because this case does not involve the "well established" rule promulgated in the Seventh Circuit; moreover, it does not involve the legal-equitable interplay exemplified in section 1981 and Title VII claims. As a result, McKnight has very little persuasive force.

In Williamson v. Handy Button Machine Co., 817 F.2d 1290 (7th Cir. 1987), a similar situation regarding the interplay between section 1981 and Title VII was addressed. The court held that when legal and equitable actions are tried concurrently, the jury's verdict governs the common factual issues. Williamson, 817 F.2d at 1293-94. The court grounded its holding on the federal constitutional right to trial by jury. In order to make sure the right to trial by jury remains uninfringed, the jury result in the legal action is allowed to control the trial court's judgment in the equitable action. Williamson, 817 F.2d at 1293-94; see also Lincoln v. Board of Regents of the University System of Georgia, 697 F.2d 928, 934 (11th Cir. 1983). This concern, however, does not translate to the Illinois courts. As noted above, Martin, 163 Ill. 2d at 73, held that the Illinois constitutional right to a jury trial differed from that under the federal constitution. But the issue here is not so much one of vindicating the right to a jury trial as in Williamson, but fulfilling the legislative intent that a consumer-fraud action be tried by the bench. Thus, while Williamson may be applicable to a joint proceeding in which legal actions and equitable actions are tried together, it does not have application where the statute at issue does not confer the right to a jury trial. Further,

<u>Williamson</u> appears to follow the well established rule discussed in <u>McKnight</u>. For these reasons, <u>Williamson</u> is distinguishable.

In the last of the section 1981 and Title VII cases, plaintiffs rely on <u>Artis v. Hitachi Zosen Clearing, Inc.</u>, 967 F.2d 1132, 1137 (7th Cir. 1992), for the proposition that the jury result must bind the trial court on the bench result. <u>Artis</u>, however, like <u>McKnight</u> and <u>Williamson</u>, follows the rule observed in the Seventh Circuit of allowing the jury result to bind the trial court on common factual issues when section 1981 and Title VII claims are tried simultaneously. Again, this holding is founded on the federal constitutional right to a jury trial; the right in Illinois differs. <u>Martin</u>, 163 Ill. 2d at 73. The right to a jury trial is not at issue here; rather, it is the converse, the lack of a right to a jury trial under the Consumer Fraud Act, that is at issue here. Additionally, as noted in <u>Artis</u>, the holding is based on the federal rule regarding legal-equitable issues tried jointly in general, and section 1981 and Title VII claims tried jointly in particular, which is observed in the Seventh Circuit and is therefore of limited value in the case at hand.

The fourth federal case, <u>Florists' Nationwide Telephone Delivery Network v. Florists' Telegraph Delivery Association</u>, 371 F.2d 263, 270-71 (7th Cir. 1967), held that the jury trial portion of a concurrent bench-jury trial must proceed first in order to preserve the party's right to a jury trial. In reaching this conclusion, the court stated that "in such a case [of legal and equitable matters together] a trial of either claim before the other raises a collateral estoppel to the relitigation of those issues essential to the decision which are common to both claims and are decided in connection with the claim tried first." <u>Florists' Nationwide Delivery</u>, 371 F.2d at 270. Plaintiffs look to this statement in order to support their argument. <u>Florists' Nationwide Delivery</u> is distinguishable, however, for two reasons. First,

it illustrates the legal-equitable rule followed by the Seventh Circuit. As <u>Florists' Nationwide Delivery</u> hews to this rule, it is inapplicable to the case at hand in which the right to a jury has not been granted. Second, and more importantly, despite the reference to collateral estoppel, the decision in <u>Florists' Nationwide Delivery</u> does not actually involve the rule of collateral estoppel. This was recognized in <u>McKnight</u>: in dismissing the collateral estoppel argument, the court stated that the general rule in which the jury's verdict binds the trial court in a dual bench-jury trial "is sometimes described as an application of the principle of collateral estoppel, but it is not, since there is no final judgment when the judge makes his decision--just a jury verdict on which judgment has yet to be entered." <u>McKnight</u>, 908 F.2d at 113; see also <u>Ballweg</u>, 114 Ill. 2d at 113 (finality for purposes of collateral estoppel not achieved until appellate rights exhausted). <u>Florists' Nationwide Delivery</u> is distinguishable and is unpersuasive. Having reviewed the federal authority upon which plaintiffs rely, we find it to be distinguishable.

We next turn to the Illinois authority cited by plaintiffs in support of their argument that the jury's factual findings on common issues must bind the trial court's determination in a concurrent bench-jury trial. Plaintiffs cite to <u>First National Bank of Hoffman Estates v. Fabbrini</u>, 255 Ill. App. 3d 99 (1993), for that proposition. <u>Fabbrini</u>, however, is distinguishable. In <u>Fabbrini</u>, the defendants first filed an action against the plaintiff that ended up in the law division of the circuit court. <u>Fabbrini</u>, 255 Ill. App. 3d at 100. The plaintiff answered the defendants' complaint and filed a counterclaim in that action. <u>Fabbrini</u>, 255 Ill. App. 3d at 100. Later, the plaintiff also filed a separate action, seeking to foreclose the property at issue. <u>Fabbrini</u>, 255 Ill. App. 3d at 100. The defendants answered the foreclosure complaint and filed an affirmative defense invoking the pendency

of their action in the law division of the circuit court.  Fabbrini, 255 Ill. App. 3d at 100-01.

Thereafter, the defendants moved to stay the foreclosure proceeding and the trial court

denied the motion leading to the interlocutory appeal of the denial of the motion to stay.

Fabbrini, 255 Ill. App. 3d at 101.

The appellate court held that the denial of the stay was erroneous because it would

have the effect of compromising the defendants' constitutional right to a jury trial.  Fabbrini,

255 Ill. App. 3d at 102-03.  Significant to its holding, the appellate court stated:

"[The plaintiff] argues that if it filed its foreclosure action as a counterclaim in the law

division action, it would suffer irreparable harm due to the length of time that would

elapse before trial.  However true this argument may be, it pales in comparison to

the prejudice to the [defendants'] right to a jury trial if the foreclosure action

proceeded to judgment before the previously filed action between the parties

pending in the law division of the circuit court.  The [defendants] have exercised their

constitutional right to a jury trial in the law division action.  [Citation.]  Because they

do not seek affirmative relief in the foreclosure action, the [defendants] are not

entitled to a jury trial as a matter of right.  [Citation.]  If judgment was entered in the

foreclosure action before the law division action, the court's determination of the

factual issues common to both actions would, by application of the doctrine of

collateral estoppel, be binding upon the [defendants] in the law division action, thus

depriving them of the right to have those common issues of fact determined by a

jury.  The right to a jury trial is of constitutional origin and courts should be inclined

to protect and enforce the right.  [Citation.]  Because we believe that the issues of

fact common to the [plaintiff's] foreclosure action and its counterclaim in the law

division action will determine the outcome in both actions, the [defendants'] right to have these issues determined by a jury is far more compelling than the [plaintiff's] interest in securing a speedier determination of its foreclosure action." Fabbrini, 255 Ill. App. 3d at 102.

In Fabbrini, therefore, the court was concerned about the order in which two independent cases were resolved, because one, if resolved earlier than the other, could effectively preclude the defendants' exercise of their constitutional right to a jury trial. Here, by contrast, there is only a single action, tried simultaneously to a jury and to the bench. There is no issue of a final judgment raising the specter of the operation of collateral estoppel to deprive plaintiffs of their right to a jury trial. Moreover, the jury verdict was entered first; the trial court's decision in the Consumer Fraud Act claim followed. There was also, therefore, no concern that the bench trial result would somehow precede the jury verdict and operate to preclude the trial court from allowing the jury result. In addition, as noted above, plaintiffs had no right to have the jury consider their consumer-fraud claim. This prohibition of the right to have the jury consider the claim, along with the other points noted above, renders Fabbrini too procedurally inapposite to support plaintiffs' contention.

Plaintiffs also turn to Washington Courte, 267 Ill. App. 3d at 823-24, for the proposition that a finding of liability for common-law fraud necessarily encompasses the essential elements required to prove liability for a violation of the Consumer Fraud Act. There, the plaintiff alleged claims of both common-law fraud and a violation of the Consumer Fraud Act. Washington Courte, 267 Ill. App. 3d at 796. Following a trial, the plaintiff prevailed on both claims, and the defendant appealed the sufficiency of the evidence supporting both the jury's verdict on the common-law fraud claim and the trial

court's judgment on the Consumer Fraud Act claim. Washington Courte, 267 Ill. App. 3d at 793-94. The appellate court, after carefully reviewing the evidence elicited at trial, concluded that the jury's verdict on the common-law fraud claim was not against the manifest weight of the evidence. Washington Courte, 267 Ill. App. 3d at 819. In affirming the trial court's judgment on the claim under the Consumer Fraud Act, the appellate court held that "a determination that a plaintiff has established a prima facie case of fraud under the common-law is sufficient to warrant the conclusion that the same acts violate the Consumer Fraud Act." Washington Courte, 267 Ill. App. 3d at 823-24.

The posture of the Washington Courte case is key to understanding its applicability to this case. There, the appellate court was asked to review whether two findings of liability, one for common-law fraud and one for a violation of the Consumer Fraud Act, were against the manifest weight of the evidence. In determining that the jury's verdict on the common-law fraud claim was not against the manifest weight of the evidence, the appellate court necessarily answered the same question with respect to the Consumer Fraud Act claim. Here, however, we are faced with a finding of liability for common-law fraud and a judgment of nonliability under the Consumer Fraud Act. We are asked to hold that a finding of liability for common-law fraud mandates a finding of a violation of the Consumer Fraud Act. Washington Courte does not make such a broad claim and cannot be expanded to encompass such a claim. Only where there are findings of liability as to both common-law fraud and a violation of the Consumer Fraud Act will Washington Courte come into play to govern the inquiry of whether the findings are against the manifest weight of the evidence. Here, plaintiffs do not contend that the trial court's judgment was against the manifest

weight of the evidence but, rather, that it was mandated by the jury's verdict. Washington Courte, therefore, does not apply to this situation and does not support plaintiffs' argument.

Plaintiffs also rely on Aetna Screw Products Co. v. Borg, 116 Ill. App. 3d 206 (1983), for the proposition that where there are factually related legal and equitable claims, the legal claims must be resolved first by the jury before there is any judicial resolution of the equitable claims. In other words, plaintiffs appear to suggest that the jury's determination on a legal claim is binding on the trial court's determination on a factually related equitable claim. We do not believe that this case involves a legal-equitable dichotomy; both the common-law fraud claim and the claim under the Consumer Fraud Act involve monetary damages and would best be viewed as legal claims. While no jury right attaches to the claim under the Consumer Fraud Act, this alone does not make it an equitable claim. Plaintiffs' reliance on Aetna Screw is flawed from its inception.

Notwithstanding the faulty reliance, Aetna Screw is also inapposite to this case. There, the trial court determined that the doctrine of res judicata applied to related legal and equitable claims such that the invocation of a counterclaim served to waive the defendant's jury demand. Aetna Screw, 116 Ill. App. 3d at 214. The appellate court reversed, finding that res judicata did not apply because the claims were not sufficiently related. Aetna Screw, 116 Ill. App. 3d at 214. Thus, at most, Aetna Screw stands for the proposition that res judicata could apply to related claims in a manner that would infringe on a party's right to a jury trial. Here, however, that concern is not implicated, because plaintiffs received a trial by jury on their claim for common-law fraud. Aetna Screw does not support plaintiffs' position.

Plaintiffs also cite to Howard T. Fisher & Associates, Inc. v. Shinner Realty Co., 24 Ill. App. 2d 216 (1960), for the same proposition as in Aetna Screw. For the reasons given above, we find Howard T. Fisher to be inapposite as well. We also note that there res judicata was applied to bar a later suit on the same issues. Here, by contrast, the same factual issues were tried at the same time in a combined bench-jury proceeding and no issue of res judicata arises.

We have reviewed the main sources used by plaintiffs to support their argument regarding the inconsistency of the results between the bench trial and the jury trial. Our review has demonstrated that the cases relied upon by plaintiffs are inapposite to and unpersuasive of their claims that the jury's verdict must control the trial court's judgment. Plaintiffs have failed to carry their burden of persuasion on this point.

Plaintiffs also argue that their right to a jury trial is infringed if the trial court on the Consumer Fraud Act claim is not bound by the jury's determination on the common-law fraud claim. This contention is backwards. There is no right to a jury trial in a proceeding under the Consumer Fraud Act. Martin, 163 Ill. 2d at 76. Requiring the jury's verdict to determine common issues of fact in the bench trial would render the bench trial a de facto jury trial. Allowing each finder of fact to come to an independent determination preserves plaintiffs' right to a trial by jury on their common-law fraud claim and preserves the statutory scheme of the Consumer Fraud Act, which does not confer a right to a jury trial. Plaintiffs' contention about the paramount right to a jury trial is unavailing.

Plaintiffs also argue that the jury's verdict on their common-law fraud claim provides the requisite determinations on common issues of fact to satisfy plaintiffs' claim under the Disclosure Act. Plaintiffs advance the same reasoning they employed in conjunction with

the Consumer Fraud Act claim. For the same reasons set forth above in relation to the Consumer Fraud Act, we reject plaintiffs' arguments pertaining to the preclusive effect of the jury's verdict over the trial court's judgment on their Disclosure Act claim.

We note that, in the context of legal and equitable claims being presented for trial at the same time, courts have observed that the independence of the two fact finders, the jury and the bench, does not necessarily present a problem with the right to a jury trial. International Financial Services Corp. v. Chromas Technologies Canada, Inc., 356 F.3d 731, 735 (7th Cir. 2004); Perdoni Brothers, Inc. v. Concrete Systems, Inc., 35 F.3d 1, 5 (1st Cir. 1994); Andrews v. City of Philadelphia, 895 F.2d 1469, 1483 n.4 (3d Cir. 1990); Lincoln, 697 F.2d at 934. Indeed, inconsistent results between the two independent finders of fact are expected in such a system. Perdoni, 35 F.3d at 5. The decision as to the binding nature of one joint fact finder over the other, therefore, must be made in the context of how the joint trial arises. In the federal cases immediately cited above, the right to a jury trial was vindicated in all circumstances. (Those cases analyzed it as a legal-equitable issue, and the fact that an action in equity was controlled by a jury result was of no concern because advisory juries may be empaneled to hear matters in equity. See Hofferkamp v. Brehm, 273 Ill. App. 3d 263, 270 (1995). Further, no right or statute is being infringed in a purely legal-equitable environment.) Here, a common-law claim was heard jointly with a statutory claim. To allow jury participation in the statutory claim would violate the dictates of the statute. To bind one fact finder by the other's result would infringe on either the jury right or the statutory scheme. Here, however, the trial court's refusal to be bound by the jury's result vindicated both plaintiffs' right to a jury trial on the common-law fraud claim and the statutory scheme in the consumer-fraud claim. Thus, in order to vindicate both the right

to a jury trial and the statutory command, inconsistency between the fact finders must be tolerated in this case.

To sum up, we affirm the judgment of the circuit court of Du Page County in matters relating to the trial of the cause itself in case No. 2--05--1073. In other words, we find no merit to the arguments presented on appeal or on cross-appeal. We reverse the trial court's judgment in case No. 2--06--0036, and we remand with directions that the trial court consider plaintiffs' petition for costs on its merits and noting that defendants are free to file any pertinent objections thereto.

No. 2--05--1073, Affirmed.

No. 2--06--0036, Reversed and remanded with directions.

BYRNE and CALLUM, JJ., concur.