KENNETH B. ANDERSON *et al.*, Plaintiffs-Appellants, v. LILA L. KLASEK *et al.*, Defendants-Appellees.

Fifth District    No. 5—07—0390

Opinion filed July 27, 2009.

Alfred E. Sanders, Jr., of Sanders & Associates, of Marion, for appellants.

John R. Clemons, of Southern Illinois Law Center, LLC, of Carbondale, for appellee Lila L. Klasek.

Paul R. Lynch and Greg A. Gaz, both of Craig & Craig, of Mt. Vernon, for appellee Jane Butcher.

JUSTICE GOLDENHERSH delivered the opinion of the court:
Plaintiffs, Dr. Kenneth B. Anderson and Lois A. Anderson, filed a

four-count complaint in the circuit court of Jackson County after purchasing a house with termite damage. Count I was directed against defendant Lila L. Klasek, the seller, and alleged a violation of the Residential Real Property Disclosure Act (Disclosure Act) (765 ILCS 77/1 *et seq.* (West 2002)). Count II was a negligence claim directed against defendant Mike Smith, a home inspector. Count II was dismissed prior to the trial when plaintiffs and Smith reached an out-of-court settlement. Count III was directed against defendant Jane Butcher, Klasek's real estate agent, and alleged a violation of the Real Estate License Act of 2000 (License Act) (225 ILCS 454/1—1 *et seq.* (West 2002)). Count IV was also directed against Butcher and alleged a violation of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2002)). The case was tried before a jury. The jury returned a verdict in favor of both defendants. Plaintiffs now appeal. On appeal, plaintiffs contend as follows: (1) the trial court erred in allowing the case to proceed to a jury trial and the judgment must be reversed and the cause remanded with directions that a bench trial be conducted, (2) the trial court erred in giving jury instructions on the Disclosure Act claim, and (3) the trial court erred in denying plaintiffs' motion to amend the complaint to conform to the proofs at the trial. We reverse and remand.

## FACTS

Plaintiffs purchased a home located at 97 Birdsong in Carbondale from Lila Klasek in 2003 after months of negotiations. Jane Butcher was the listing agent. The home was initially listed at $199,950. On July 15, 2003, Klasek completed a disclosure form required by the Disclosure Act. Questions 18 and 19 pertained to termites and wood-boring insects. Question 18 stated, "I am aware of current infestations of termites or other wood[-]boring insects." Question 19 stated, "I am aware of a structural defect caused by previous infestations of termites or other wood[-]boring insects." Klasek answered "No" to both questions.

On July 18, 2003, plaintiffs offered Klasek $196,500. Klasek counteroffered $198,000. The initial offer was contingent on a home inspection. Plaintiffs retained a home inspector, Mike Smith. The inspection was conducted on July 26, 2003. Kenneth Anderson accompanied Smith to the home inspection, during which some problems were discovered.

On July 28, 2003, Dr. Anderson wrote a letter to his real estate agent, Leslie Panky. In the letter he listed eight "[s]ignificant issues with the house" that were not obvious during plaintiffs' walk through of the house but were discovered via the home inspection. The alleged

problems included unsafe electrical breaker boxes, condensation/ leaking in basement air-conditioning units, and live termite infestation. Regarding the termite infestation, Dr. Anderson specifically stated as follows:

> "Termite tracks and live termites were found in the basement and crawl[ ]space. I understand that the house is under contract and the seller should contact the contractor immediately to control the problem—regardless of whom the ultimate buyer is. A thorough inspection and report of findings should be requested from the seller."

On August 4, 2003, Dr. Anderson sent a followup letter to his agent in which he again noted the live termite damage, along with additional problems. He stated that he and his wife would no longer be willing to pay $196,500 for the house but would only be willing to offer $185,000.

On September 8, 2003, Dr. Anderson sent another letter to his real estate agent "to reiterate [their] offer on the property at 97 Birdsong." Dr. Anderson noted the "significant issues with the property" and the fact that he was not aware of any change in condition to the property; nevertheless, Dr. Anderson increased their offer from $185,000, to $186,000. Dr. Anderson noted his "earnest desire that this matter be resolved without further delay." On September 10, 2003, Lila Klasek accepted plaintiffs' offer of $186,000, but she specifically stated that the property was to be sold in "as is" condition. The contract was modified to note both the new sales price and the fact that the property was being sold in "as is" condition. Plaintiffs accepted the new contract.

Klasek had contracted with Terminix for several years prior to the sale of the home. Klasek said she had consulted with Terminix prior to filling out the disclosure form. Klasek retained Terminix to perform a new inspection in August 2003, which revealed live termite infestation. Klasek said after she obtained the results from Terminix, she took them to the office of her agent, Jane Butcher. Butcher was not present, but Klasek left the report at her office. Butcher, however, testified she never received the paperwork from Klasek.

Leslie Panky contacted Jane Butcher approximately one week prior to the closing, to ask about the termite inspection reports. Butcher knew that Klasek had already moved to Nebraska, so Butcher went to the house to see if the reports were there. Butcher could not find the reports, so she contacted Terminix to get a copy. Butcher received the report on October 26, 2003, the day before the closing.

Butcher attended the closing, but Klasek did not, as she was living in Nebraska. Butcher testified that she brought the Terminix reports to the closing and gave them to Dr. Anderson. She said that Dr.

Anderson reviewed the reports and that the closing proceeded without objection. Dr. Anderson denied receiving the reports prior to the closing.

In their lawsuit, plaintiffs claimed that Klasek was informed by Terminix prior to July 15, 2003, that her property contained live infestations and that she knowingly failed to take the steps recommended by Terminix to rid her property of termites, that she knew her property contained structural damage from prior infestations and failed to repair the structural damage, that she knowingly made false representations on items 18 and 19 of the disclosure report, and that plaintiffs have been damaged by Klasek's misrepresentations. Plaintiffs claimed that Butcher violated the License Act by failing to disclose a known latent defect and violated the Consumer Fraud Act by misrepresenting the condition of the house to Panky. Butcher denied that she failed to disclose the condition of the house prior to the closing.

After plaintiffs filed suit, Butcher demanded a jury trial. Plaintiffs moved to strike the jury demand on the basis that there was no right to a jury trial. The trial court denied plaintiffs' motion to strike. Klasek did not demand a jury trial in her answer. The litigation proceeded to a jury trial, after which the jury returned a verdict in favor of both defendants. Plaintiffs filed a posttrial motion in which they argued for a new trial on all counts, on the basis that defendants had no right to a jury trial and the case should have been tried as a bench trial. Plaintiffs asked the trial court to enter an order vacating the decision of the jury and to order a bench trial on all counts. The trial court denied plaintiffs' posttrial motion. Plaintiffs now appeal.

## ANALYSIS

Plaintiffs first argue that a new bench trial on all counts should be granted because defendants were not entitled to a jury trial under the Consumer Fraud Act, the Disclosure Act, or the License Act. Plaintiffs also argue that the count directed against Klasek should not have been tried before a jury because Klasek failed to make a jury demand, thereby waiving any right to a jury trial. After careful consideration, we agree with plaintiffs.

■ Here, the trial court's ruling depended solely on the construction of statutes; thus, our review is *de novo* with no deference to the trial court. See *Paul H. Schwendener, Inc. v. Larrabee Commons Partners*, 338 Ill. App. 3d 19, 28, 787 N.E.2d 192, 200 (2003). With regard to the issue of whether the trial court erred in conducting a jury trial, we note that not all actions for legal relief are triable by jury in Illinois as of right. *Martin v. Heinold Commodities, Inc.*, 163

Ill. 2d 33, 72, 643 N.E.2d 734, 753 (1994). Section 13 of article I of the 1970 Illinois Constitution specifically states, "The right of trial by jury as heretofore enjoyed shall remain inviolate." Ill. Const. 1970, art. I, §13. The meaning of this provision has been explained as follows:

" 'The constitutional provision that "the right of trial by jury as heretofore enjoyed shall remain inviolate[ ]" means that the right to a jury trial shall continue in all cases where such right existed at common law at the time the constitution was adopted, *but that constitutional provision has never been held to prohibit the legislature from creating new rights unknown to the common law and provide for their determination without a jury.* [Citation.]' (Emphasis added.)" *Martin*, 163 Ill. 2d at 72-73, 643 N.E.2d at 753, quoting *Standidge v. Chicago Rys. Co.*, 254 Ill. 524, 532, 98 N.E. 963, 965 (1912).

The right to a jury trial under the Illinois Constitution is not guaranteed in any action nonexistent at common law, even if the action is legal in nature; instead the right continues in all cases where the right existed at common law at the time the federal Bill of Rights was adopted, but the General Assembly may create an action unknown at common law and provide a right to a trial by jury. *Martin*, 163 Ill. 2d at 72-73, 643 N.E.2d at 752-53.

■ In *Martin*, the Illinois Supreme Court specifically found that an action under the Consumer Fraud Act was a new statutory right created by the legislature and that, thus, there was no right to a jury trial. The Consumer Fraud Act " 'created a new cause of action different from the traditional common law tort of fraud.' " *Martin*, 163 Ill. 2d at 75, 643 N.E.2d at 754, quoting *Richard/Allen/Winter, Ltd. v. Waldorf*, 156 Ill. App. 3d 717, 721, 509 N.E.2d 1078, 1080 (1987). However, *Martin* went a step further. In addition to holding that the Consumer Fraud Act affords no right to a jury trial, it also holds that the General Assembly intended that an action under the Consumer Fraud Act be tried without a jury. *Martin*, 163 Ill. 2d at 76, 643 N.E.2d at 755.

Unlike common law fraud, "the Consumer Fraud Act does not require actual reliance, an untrue statement regarding a material fact, or knowledge or belief by the party making the statement that the statement was untrue." *Martin*, 163 Ill. 2d at 76, 643 N.E.2d at 754. The supreme court directly relied on an appellate decision which held that the seller's intent, whether good faith or bad faith, is not important, but rather it is the effect of the seller's conduct on the consumer that is important. *Martin*, 163 Ill. 2d at 76, 643 N.E.2d at 754. The supreme court then concluded that "the wording of the statute[ ] and its legislative history[ ] indicate that the legislature intended the action to be tried without a jury." *Martin*, 163 Ill. 2d at

76, 643 N.E.2d at 755. Relying on the supreme court's decision in *Martin*, we conclude the trial court erred in conducting a jury trial on plaintiffs' claim against Butcher under the Consumer Fraud Act.

Likewise, neither the Disclosure Act nor the License Act existed at common law; both are statutory creations. The Disclosure Act was approved on July 20, 1993, effective October 1, 1994. 765 ILCS 77/1 (West 2002). The License Act was approved on July 22, 1999, effective December 31, 1999, and superseded the Real Estate License Act of 1983. 225 ILCS 454/1—1 (West 2002). Despite the fact that neither act was in existence prior to 1971, both defendants argue that the acts under which plaintiffs seek recourse against them are akin to common law fraud. Neither Klasek nor Butcher cites any controlling case law in support of their arguments.

Klasek argues that the Disclosure Act "is not a statutory proceeding unknown at common law as it is essentially nothing more than a codification of common law fraud and in particular fraud by misrepresentation." However, the Disclosure Act is certainly more than a codification of common law fraud because section 45 of the Disclosure Act specifically states, "This Act is not intended to limit or modify any obligation to disclose created by any other statute or that may exist in common law in order to avoid fraud, misrepresentation, or deceit in the transaction" (765 ILCS 77/45 (West 2002)). Section 45 of the Disclosure Act makes it clear that a plaintiff still retains the rights which existed at common law but, in addition, can now sue under the Disclosure Act. Thus, we agree with plaintiffs that this language indicates that a suit filed under this statute is a cause of action separate and distinct from one filed under common law fraud.

Butcher also argues that the License Act is nothing more than a codification of common law fraud. Again, we disagree. Section 15—5 of the License Act specifically states, "[A]pplication of the common law of agency to the relationships among real estate brokers and salespersons and consumers of real estate brokerage services has resulted in misunderstandings and consequences that have been contrary to the best interests of the public." 225 ILCS 454/15—5(a) (West 2002). The General Assembly clearly intended to go beyond common law concepts to create a new statutory cause of action to "promote and provide stability in the real estate market." 225 ILCS 454/15—5(a) (West 2002).

In *Martin*, the supreme court specifically pointed out that the drafters of our constitution were aware that our General Assembly could create a new statutory right not subject to the right of trial by jury:

> "[I]t was noted at the 1970 Constitutional Convention that 'a right to recover [in a personal injury action] without regard to fault

might be regarded by the courts as a new cause of action, distinctively different from the common law right to recover for negligence.' (3 Record of Proceedings, Sixth Illinois Constitutional Convention 1430.) The drafters chose not to change this area of the constitution." *Martin*, 163 Ill. 2d at 76-77, 643 N.E.2d at 755. Applying the same principles here, we find that defendants were not entitled to a jury trial in the actions brought pursuant to the Disclosure Act or the License Act.

We note that plaintiffs do not raise an alternative argument that the jury's verdict was against the manifest weight of the evidence. We are concerned about giving plaintiffs a second bite at the apple, especially since the facts here indicate that Dr. Anderson was aware of live termite infestation months before the closing and the house was purchased "as is." In a sense, it seems counter to everything we know about jurisprudence to say that the submission of plaintiffs' claims to a jury rather than a judge constituted error; however, that is the state of the law at this time in Illinois.

In *Werderman v. Liberty Ventures, LLC*, 368 Ill. App. 3d 78, 857 N.E.2d 320 (2006), a jury found against the defendants under the common law fraud claim, while the trial court found for the defendants under the Consumer Fraud Act. Our colleagues in the Second District, relying on *Martin*, found that to bind the trial court by the jury's results would infringe upon the statutory scheme because plaintiffs would be receiving a *de facto* jury trial, which would violate the legislative intent behind the Consumer Fraud Act and result in judicial legislation. *Werderman*, 368 Ill. App. 3d at 83, 857 N.E.2d at 325. The same type of judicial legislation would result in the instant case if the jury's verdict were allowed to stand.

## CONCLUSION

Accordingly, we hereby reverse the judgment of the circuit court of Jackson County and remand for a bench trial on the remaining claims filed by plaintiffs. Because of our determination on plaintiffs' first argument, we need not address the other arguments raised by plaintiffs.

Reversed; cause remanded with directions.

WEXSTTEN, P.J., and DONOVAN, J., concur.