FIFTH DIVISION
November 7, 2008

No. 1-07-0755

| | | |
|---|---|---|
| TRACI HANSON-SUMINSKI | ) | Appeal from the |
| | ) | Circuit Court of |
| | ) | Cook County. |
| Plaintiff-Appellee, | ) | |
| v. | ) | No. 04 M1 162203 |
| | ) | |
| ROHRMAN MIDWEST MOTORS, INC., | ) | Honorable |
| d/b/a Arlington Acura in Palatine, | ) | Patrick Lustig, |
| | ) | Judge Presiding |
| Respondent-Appellant. | ) | |

PRESIDING JUSTICE FITZGERALD SMITH delivered the opinion of the court:

Traci Hanson-Suminski (plaintiff) brought an action to recover damages arising from alleged misrepresentations by Rohrman Midwest Motors, Inc., doing business as Arlington Acura in Palatine (defendant). Following a jury trial, defendant was found guilty of common law fraud, and following a bench trial, judgment was entered in favor of plaintiff under the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq*. (West 2004)). On appeal, defendant argues that (1) the jury verdict on the common law fraud claim and the trial court's judgment under the Consumer Fraud Act are against the manifest weight of the evidence, (2) damages awarded to plaintiff under the common law fraud claim and under the Consumer Fraud Act claim are erroneous, (3) the trial court improperly entered judgment under the Consumer Fraud Act, and (4) the trial court's judgment under the Consumer Fraud Act is barred by the doctrine of election of remedies. For the following reasons, we affirm and remand for plaintiff to petition for additional fees.

## I. BACKGROUND

Plaintiff filed suit against defendant seeking damages in connection with her November

29, 2003, purchase of a used 2002 Honda Civic (Honda) from defendant. Plaintiff alleged that defendant committed common law fraud and violated the Consumer Fraud Act, by erroneously claiming the Honda had not been involved in an accident prior to the purchase date. The trial court found that plaintiff had a right to a jury trial on the common law fraud issue and the right to a bench trial for the violation of the Consumer Fraud Act claim.

At the jury trial, Andre Williams' testimony was presented first on behalf of plaintiff. Williams, a deputy custodian of records for the Alabama Department of Public Safety, averred that the Honda in question had been involved in an accident on July 29, 2003 in Marion, Alabama, where it had rotated and overturned. Williams further testified that the Honda was deemed "disabled" after the accident.

Plaintiff testified next that prior to purchasing the Honda she had looked online and in the paper for an economical, reliable car. Plaintiff stated that she wanted to purchase a car from a dealership knowing it would be more reliable than purchasing one from an individual. She saw an advertisement by defendant online for the Honda and went to the dealership. She was introduced to Mike Dobin, a salesperson for defendant, and went on a 15 or 20 minute test-drive with him. Plaintiff testified that when the car exceeded 60 miles per hour, there was a vibration in the steering wheel. She asked if the car had a lot of repairs done to it, or if it had been in an accident, to which Dobin replied, "No, it's fine." Plaintiff testified that she would not have purchased the car if she had known it had been in an accident or if Dobin had been unsure of whether it had been in an accident. Plaintiff was never told she could get the car inspected on her own, and she was not given the option of asking for a Carfax sheet. She paid $10,899.31 for the

car. Defendant replaced all four tires on the car, and when plaintiff test-drove it again, the vibration was gone.

Plaintiff further testified that once she got the car home, she noticed a little bit of rust on the door, the driver's side door would not lock except manually from the outside, and the air-conditioner came on when the defroster was turned on.

Plaintiff attempted to trade the car in for another car in July of 2004, and she was offered only half of what she had paid for it because it had been in an accident. Plaintiff was shown a Carfax vehicle history report, which was dated four months prior to plaintiff's purchase. The Carfax report indicated that the car had been in an accident in Alabama, where the vehicle had overturned and suffered "moderate or severe" damage. Plaintiff testified that she then brought the car into a body shop, where she learned that her car had definitely been in an accident. She then wrote a letter to defendant.

On cross-examination, plaintiff testified that after learning the vehicle had been in an accident and writing a letter to defendant, plaintiff received a call from Jeff Jafrani, the general manager for defendant. Jafrani told plaintiff to take a look online and see what other cars were in defendant's lot. Plaintiff called Jafrani and said there were no cars in the lot that she could afford and asked what else could be done but did not receive a response. She called again and left a message, but again did not receive a response. Plaintiff admitted that the document entitled "buyer's guide" that came with the car explained that plaintiff had the option of having her own mechanic come out and look at the vehicle, but that was not something she did prior to purchase.

Jeff Jafrani testified next for the plaintiff. Jafrani averred that he purchases cars for

defendant at auctions. He has an opportunity to inspect the cars at the auction, to see if the car has even paint, to make sure the car is running well, and to make sure there are no dents or cracks in the windshield. Jafrani testified that he is not certified and has no mechanical training in auto body repairs. He stated that during the auctions, the cars that have issues affecting their titles receive a red light, and those that do not have issues receive a green light. The Honda in this case had a green light at the auction. Once back at the dealership, defendant generally generates a performance inspection report on the purchased vehicle.

Jafrani testified that the performance inspection report for the Honda indicated that the car needed brake service, transmission service, a new headlamp, and the driver's seat tightened. Jafrani further testified that defendant does not have a body shop, and no one at the dealership has auto body training or is certified in auto body repairs. Jafrani did not have the title history of the car checked prior to plaintiff's purchase because he claimed it could have taken two months to receive.

Jafrani further testified that if there had been signs that the car had been in an accident, he would not have sold it at the dealership but, rather, would have returned it to the auction. He stated that he relied on the green light at the auction as evidence of a clean title. Jafrani further testified that at the time of plaintiff's purchase, defendant did not run Carfax reports on its cars, but that it does now. Jafrani stated that defendant paid $6,400 for the Honda, and defendant made $3,263.35 in profits on the sale to plaintiff, not including subsequent repairs.

Ken Klein testified next, stating that he operated West Side Auto Body and Consumers Auto Detective and that he had an opportunity to inspect the Honda. He noticed a crack in the

4

right quarterpanel, which was evidence of prior repairs. He noticed that the right fender had been replaced at some point, that some of the panels showed sand scratches from repairs, and that there was water damage in the trunk area. Klein further testified that normally paint build is between 3 ½ and 5 ½ millileters, and most of the areas on the Honda contained 6.1 to 8.9 millileters, indicating prior repairs.

Klein stated that the amount of repairs that had been done to the car left it in an unsafe condition and it would not have been fiscally responsible to try and rebuild the car correctly. Klein testified that there are seven levels of repair that he has established for inspection purposes, seven being unsafe to drive and not practical to repair from a cost standpoint. Klein marked the Honda as a level seven. Klein averred that the optimal value of a 2002 Honda at the time of defendant's purchase was $14,000. Klein determined that proper repairs of the vehicle would have amounted to $10,048. He averred that the proper cost of the car, after the accident, should have been $6,900. Klein also testified that in his experience in the automobile industry, his inspection of the vehicle, and his review of documents confirming that the vehicle had been in an accident, the Honda's value had been diminished by $7,275.

The defense then recalled Jafrani as a witness in its case in chief. Jafrani testified that the paint on the Honda looked good and that the car did not look like it had been in an accident. He did not notice any rust, cracks, or paint on the taillights. Jafrani further testified that he purchased the car for $6,410, and that if it was really worth $14,000 it would not have sold for $6,410. When he purchased the vehicle, Jafrani was informed that the title would be mailed to him.

Jafrani testified that all sales associates are trained to respond to a customer's questions about a vehicle's history with "I don't know." Sales associates are trained not to tell a customer that a vehicle has never been in an accident, as defendant does not always know a vehicle's prior history. Sales associates are also trained to advise customers that they may take used vehicles to their own mechanics for inspection prior to purchasing a vehicle. Jafrani averred that due to procurement costs, a Carfax report could only be obtained at a customer's specific request.

Jafrani stated that when he first learned that the Honda may have been involved in an accident, he offered to take the car back and refund plaintiff's money if the vehicle was dangerous to drive, but plaintiff did not respond to the offer.

Paul Abuah testified next for the defense. He is an automobile technician for defendant, and he inspected the Honda after it was delivered to defendant. He found no signs of any accident damage. Abuah testified that if he had noticed problems with the paint or body panels, he would have notified his service manager. He further testified that he was not ASE certified, he was not a Honda certified technician, and he had no auto body certifications or auto body training.

Thomas Fennell, defendant's expert witness, testified next. He had previously been ASE certified, but was not when he inspected the car. Fennel was certified as a master technician with Saab, Subaru, Mazda, and Volvo, but had done very little auto body work. Fennel stated that he inspected the Honda from a mechanical standpoint on May 27, 2005. He testified that the frame appeared fine, he thought the car drove well, and the car did everything it was supposed to do properly. Fennel stated that he could tell that the car had been damaged, but he did not see

anything wrong structurally. He noticed a crack along the right quarterpanel, and saw areas of paint that was lifting around the windows. He noted in his report that the quality of repair was "substandard."

Michael Dobin, the salesperson who sold plaintiff her car was defendant's final witness. Dobin testified that he attended two weeks of in-house training by his management, and then attended 10 days of outside training. He was trained to answer any questions about the conditions of the vehicles with "I don't know." Dobin testified that he did not remember any of the conversation he had with plaintiff during the test drive of the Honda. He normally sold new cars, but to his knowledge, if the used car was available to be sold, that meant it was safe to drive. Dobin received half of the commission made on the sale of the car.

At the close of all the evidence, the jury found defendant guilty of common law fraud and awarded plaintiff $7,275 in damages. The trial court stayed the enforcement of the jury verdict pending the trial court's finding on plaintiff's claim under the Consumer Fraud Act.

On February 15, 2007, the trial court conducted a nonevidentiary hearing on the plaintiff's claim under the Consumer Fraud Act. The trial court found in favor of plaintiff and against defendant in the amount of $7,275 for the Consumer Fraud Act claim, but found that satisfaction of the common law judgment would satisfy the Consumer Fraud Act judgment. Defendant was also ordered to pay plaintiff $29,629.80 in attorneys fees and $3,361.30 in additional costs. Thereafter, plaintiff filed a motion to clarify so as to prevent double recovery.

On March 7, 2007, the trial court modified its February 15, 2007, order as follows: "satisfaction of the compensatory damages of $7275 from the common law judgment will satisfy

the compensatory damages of $7275 of the Consumer Fraud Act judgment, not including

attorneys' fees." Defendant now appeals.

## II. ANALYSIS

On appeal, defendant contends that (1) the verdicts on both the common law fraud claim

and the Consumer Fraud Act claim are against the manifest weight of the evidence, (2) damages

awarded to plaintiff under both claims are erroneous, (3) the trial court improperly entered

judgment pursuant the Consumer Fraud Act claim, and (4) the trial court's judgment under the

Consumer Fraud Act is barred by the doctrine of election of remedies.

### A. Verdicts Against the Manifest Weight of the Evidence

#### 1. Common Law Fraud Verdict

Defendant's first argument is that the jury verdict on the common law fraud claim is

against the manifest weight of the evidence. Plaintiff responds that defendant failed to file a

posttrial motion or motion for a directed verdict on the common law fraud claim and, therefore,

defendant has waived this issue on appeal. Defendant maintains that the issue of waiver with

respect to the common law fraud claim has already been decided. Defendant claims that plaintiff

previously filed a motion to strike the appeal of the common law fraud claim on the basis that

defendant had waived it and that, in response to such motion, defendant explained that in its brief

in opposing to plaintiff's motion for judgment on the Consumer Fraud Act claim, it clearly

attacked the sufficiency of the common law fraud judgment and asked for a judgment not

withstanding the verdict on the common law fraud claim. Defendant further avers that plaintiff's

motion to strike was denied on May 17, 2007, and plaintiff's subsequent motion to reconsider

was denied on June 21, 2007, and therefore the trial court found defendant to have properly preserved his common law fraud appeal.

After a thorough review of the record, however, we have found no indication that plaintiff filed a motion to strike this appeal or a response from defendant to that motion to strike. Furthermore, defendant failed to include such documents in the appendix to its brief and did not cite to these documents within its reply brief. Because "an appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error," we find that defendant, as appellant, has failed to meet his burden. Foutch v. O'Bryant, 99 Ill. 2d 389, 391 (1984).

We note that section 2-1202(b) of the Illinois Code of Civil Procedure requires that requests for a new trial must be sought in a single posttrial motion, which must state the points relied upon and the relief desired. 735 ILCS 5/2-1202(b) (West 2004). Supreme Court Rule 366(b)(2)(iii) (134 Ill. 2d R. 366(b)(2)(iii)) limits the scope of review in civil jury cases to the points, grounds, and relief specified in the posttrial motion. Accordingly, because defendant failed to preserve any issues regarding the common law fraud claim, such issues are waived on review.

### 2. Consumer Fraud Act

Defendant's next contention is that the trial court's verdict on the Consumer Fraud Act claim was against the manifest weight of the evidence for three reasons: (1) plaintiff failed to sustain her burden of proof, (2) plaintiff failed to establish that fraud could have been avoided through the exercise of ordinary prudence, and (3) the alleged misrepresentation was mere

"puffery." We disagree.

In an ordinary civil case, because there are no sound reasons for favoring one party over another, the party with the burden of persuasion must prove his case by a preponderance of the evidence. Avery v. State Farm Mutual Automobile Insurance Co., 216 Ill. 2d 100, 191 (2005). A proposition proved by a preponderance of the evidence is one that has been found to be more probably true than not true. Avery, 216 Ill. 2d at 191. In the context of common law fraud, the law presumes that the transaction is fair and honest, and accordingly, fraud must be proved by clear and convincing evidence. Avery, 216 Ill. 2d at 191. The Consumer Fraud Act, however, does not expressly provide the standard of proof required to succeed in a private cause of action. Avery, 216 Ill. 2d at 192. However, based on the liberal intent of the legislature behind the Act, and based on the fact that the Act does not expressly require a greater standard of proof, this court has held that the appropriate standard of proof for a statutory fraud claim is preponderance of the evidence. Avery, 216 Ill. 2d at 192.

The Consumer Fraud Act provides broader consumer protection than the common law action of fraud by prohibiting any deception or false promises. Smith v. Prime Cable, 276 Ill. App. 3d 843, 856 (1995). Therefore, to state a cause of action for statutory fraud, a party need not prove all the elements of common law fraud. Salkeld v. V.R. Business Brokers, 192 Ill. App. 3d 663, 677 (1989). The elements necessary to sustain a cause of action under the Consumer Fraud Act are: (1) a statement by the seller; (2) of an existing or future material fact; (3) that was untrue, without regard to defendant's knowledge or lack thereof of such untruth; (4) made for the purpose of inducing reliance; (5) on which the victim relies; and (6) which resulted in damages to

the victim. <u>Malooley v. Alice</u>, 251 Ill. App. 3d 51, 55 (1993); <u>Connick v. Suzuki Motor Co.</u>, 174 Ill. 2d 482, 501 (1996). A material fact exists where a buyer would have acted differently knowing the information or if it concerned the type of information upon which a buyer would be expected to rely in making a decision whether to purchase. <u>Connick</u>, 174 Ill. 2d at 505. Furthermore, a plaintiff's actual reliance is not required, but a plaintiff must show that defendant's consumer fraud proximately caused their injury. <u>Connick</u>, 174 Ill. 2d at 501.

In the case at bar, plaintiff specifically asked Dobin, a sales representative for defendant, if the vehicle had been in any accidents to which Dobin responded, "No, it's fine." Plaintiff testified that if she had known the car had been in an accident, or had Dobin been unsure of whether the car was in an accident, she would not have purchased it. She was not given the option of receiving a Carfax report, and she was never told she could have the car inspected on her own. Based on these facts, we find that a trier of fact could find by a preponderance of the evidence that defendant violated the Consumer Fraud Act by, in the ordinary course of commerce, misrepresenting the car's history and thereby inducing plaintiff to purchase the car.

Defendant nevertheless maintains that plaintiff failed to establish that the alleged fraud could have been avoided through the exercise of ordinary prudence, and that the alleged misrepresentation was mere "puffery," and thus the trial court's judgment under the Consumer Fraud Act was against the manifest weight of the evidence. We disagree with both of defendant's arguments.

First, under the Consumer Fraud Act, plaintiff was under no obligation to ascertain the accuracy of Dobin's statement claiming the car had not been in any accidents. See <u>Harkala v.</u>

1-07-0755

Wildwood Reality, Inc., 200 Ill. App. 3d 447, 453 (1990) (finding that the Consumer Fraud Act is intended to provide greater protection than the common law action of fraud, and therefore "a plaintiff need not show actual reliance or diligence in ascertaining the accuracy of the misstatements"). Although it is true that when a plaintiff is alleging a misrepresentation or omission, a key question is whether such misrepresentation or omission was "discoverable through the exercise of ordinary prudence by the plaintiff," we do not believe the misrepresentation about the car's history was so discoverable. Randels v. Best Real Estate, Inc., 243 Ill. App. 3d 801, 807 (1993) (real estate broker's failure to inform purchaser that new home would be subject to sewer hookup did not constitute an omission pursuant to the Consumer Fraud Act because the information was a matter of public knowledge, set out in a public ordinance, and plaintiffs did not inquire about the septic system or sewer availability). Here, plaintiff specifically asked about the vehicle's accident history, which was not a matter of public knowledge. Defendant had access to such information, but did not provide it for plaintiff. Rather, defendant made an affirmative misrepresentation. Under these circumstances, we conclude that defendant's statement was a misrepresentation of fact, which was not readily discoverable by plaintiff, and therefore violated the Consumer Fraud Act.

Second, we do not agree with defendant's claim that Dobin's statement about the car's accident history merely constituted "puffery." "Puffery" denotes the exaggerations reasonably to be expected of a seller as to the degree of quality of his or her product, the truth or falsity of which cannot be precisely determined. Avery v. State Farm Mutual Automobile Insurance Co., 216 Ill. 2d 100, 173 (2005). "Puffing" signifies "meaningless superlatives that no reasonable

12

person would take seriously, and so it is not actionable as fraud." Speaker of Sports, Inc. v. ProServ, Inc., 178 F. 3d 862, 866 (1999). In the case at bar, plaintiff asked a specific question about whether the vehicle had been in any accidents or had any repairs done to it, to which Dobin replied, "No, it's fine." We cannot say that it is reasonably to be expected of a car salesman to claim used cars have not been in accidents. Nor can we say that a reasonable person would fail to take Dobin seriously when he answered plaintiff's specific question about the history of the vehicle, when such history was readily available to defendant. As such, we find defendant's contention that Dobin's statement was mere puffery to be without merit.

### B. Erroneous Damages

Defendant's next contention on appeal is that the damages awarded to plaintiff under the Consumer Fraud Act are erroneous and against the manifest weight of the evidence. In Illinois, the measure of damages is a question of fact to be decided by the trier of fact, and a reviewing court should not substitute its judgment for that of the trier of fact. Marchese v. Vincelette, 261 Ill. App. 3d 520, 529 (1994). A reviewing court will not disturb the verdict unless all reasonable persons would agree that the amount is excessive. Marchese, 261 Ill. App. 3d at 529. An award is considered excessive if it is outside the limits of fair and reasonable compensation, results from passion or prejudice, or is so large as to shock the judicial conscience. Marchese, 261 Ill. App. 3d at 529-30. We do not believe that the plaintiff's damage award was excessive.

Defendant argues that the damage award of $7,275 was improper because it was based on the "optimal retail value" of a Honda at that time, and not the actual purchase price that defendant paid. Plaintiff's expert testified that the optimal value of the Honda at the time

13

defendant purchased the vehicle was $14,200, and that after the accident and repairs, the vehicle's value had been diminished by $7,275. Defendant maintains that because the car was purchased by plaintiff for $9,620, and not $14,200, the damages awarded to plaintiff were excessive. We disagree.

The diminished value of a product is a compensable injury in a consumer fraud cause of action. Schiffner v. Motorola, Inc., 297 Ill. App. 3d 1099, 1108 (1998); Connick, 174 Ill. 2d at 501-05. Furthermore, in making a determination of damages, absolute certainty is not required, and "all that the law requires is that there be an adequate basis in the record for the court's determination." First National Bank & Trust Co. of Evanson v. J.P. Schermerhorn & Co., 192 Ill. App. 3d 1057, 1062 (1989). In this case, we conclude that there was sufficient evidence in the record to support the trial court's determination regarding the damage award of $7275 as that constituted the diminished value of the Honda. Furthermore, we cannot say that such an award was outside the limits of fair and reasonable compensation, resulted from passion or prejudice, or was so large as to shock the judicial conscience and, therefore, we will not overturn the trial court's damage award.

### C. Improper Consumer Fraud Act Judgment

Defendant's next argument on appeal is that the trial court failed to conduct an independent evidentiary hearing or make any specific findings of fact in support of its judgment under the Consumer Fraud Act. Defendant claims that the trial court merely "rubber-stamped" the judgment obtained by the jury for the common law fraud claim. We disagree.

We first note that defendant's reliance on Werderman v. Liberty Ventures, LLC, 368 Ill.

1-07-0755

App. 3d 78 (2006), is misplaced. In <u>Werderman</u>, the jury found against defendants under the common law fraud claim, while the trial court found for defendants under the Consumer Fraud Act claim. The reviewing court noted that on appeal plaintiffs argued that the trial court had been bound by the jury's judgment by collateral estoppel, but did not argue that the finding for defendants was against the manifest weight of the evidence. <u>Werderman</u>, 368 Ill. App. 3d at 81. Therefore, the only issue before the <u>Werderman</u> court was whether the jury verdict on the common law fraud claim bound the trial court to find defendants guilty of under the Consumer Fraud Act. The court found that to bind the trial court by the jury's results would infringe on the statutory scheme, and thus "inconsistency between the fact finders must be tolerated." <u>Werderman</u>, 368 Ill. App. 3d at 91.

Werderman is inapposite to the case at bar. Here, neither party suggests that the trial court was bound to by the jury's verdict. Rather, as <u>Werderman</u> also noted, "[g]enerally, proving a common-law fraud claim also results in proving a consumer-fraud claim based on the same evidence." <u>Werderman</u>, 368 Ill. App. 3d at 82. Such was the case here. Our review of the record, as discussed previously, indicates that there was sufficient evidence to support the trial court's ruling on the Consumer Fraud Act claim. See <u>Kern v. Rafferty</u>, 131 Ill. App. 3d 728, 731 (1985). Moreover, when a trial court fails to make detailed findings of fact, as in the instant case, this court must presume the trial court found all issues and controverted facts in favor of the prevailing party. <u>Kern</u>, 131 Ill. App. 3d at 731. We therefore find defendant's argument that the trial court's judgment on the Consumer Fraud Act claim was erroneous to be without merit, as it did not require its own evidentiary hearing. See <u>Werderman</u>, 368 Ill. App. 3d at 84 (fact that trial

15

court is considering same evidence as the jury at the same time the jury is hearing it prevents relitigation).

## D. Election of Remedies

Defendant's final contention on appeal is that the trial court's judgment under the Consumer Fraud Act is barred by the doctrine of election of remedies. Defendant argues that the judgment under the Consumer Fraud Act should be vacated because plaintiff was awarded actual damages under her common law fraud claim, which bars plaintiff from recovering damages under the Consumer Fraud Act. While we acknowledge that plaintiff may not receive double recovery, we disagree with defendant's contentions. We first provide an overview of the doctrine of election of remedies.

"The doctrine of election of remedies is applicable only where a party has elected inconsistent remedies for the same injury or cause of action. [Citations.] The prosecution of one remedial right to judgment or decree constitutes an election barring subsequent prosecution of inconsistent remedial rights. [Citations.] For instance, a remedy based on the affirmance of a contract (*e.g.*, damages) is generally inconsistent with one based on the disaffirmance of the contract (*e.g.*, rescission). [Citations.] Thus, the election of either remedy is an abandonment of the other." Lempa v. Finkel, 278 Ill. App. 3d 417, 423-24 (1996).

Defendant's argument that the judgment under the Consumer Fraud Act represents a separate and subsequent action to the common law fraud judgment is incorrect. The court

specifically stayed the enforcement of the jury verdict pending the trial court's finding on plaintiff's claim under the Consumer Fraud Act. The judgment entered on February 15, 2007, which was clarified on March 7, 2007, found against defendant in the amount of $7,275, which was to be satisfied from the common law fraud judgment, as well as attorneys fees and additional costs. As such, the final judgment did not represent a "subsequent prosecution of inconsistent remedial rights (Lempa, 278 Ill. App. 3d at 424); rather, the order is simply the final resolution of the combined bench and jury trial begun earlier. See Majcher v. Laurel Motors, Inc., 287 Ill. App. 3d 719, 726 (1997). Thus, there is no subsequent prosecution of an inconsistent remedial right. Accordingly, the doctrine of election of remedies is not applicable to this case.

The case relied upon by defendant is distinguishable. Defendant offers Robinson v. Toyota Motor Credit Corp., 201 Ill. 2d 403 (2002), as an analogous case. In Robinson, the plaintiffs sought identical relief for the same injury under the Consumer Leasing Act (15 U.S.C. §§ 1667a, 1667b (1994)) and the Consumer Fraud Act. Robinson, 201 Ill. 2d at 422. The court did not allow the claim under the Consumer Fraud Act, finding that whatever right plaintiffs had to recover against Toyota for damages was foreclosed by the judgment on the Consumer Lease Act. Robinson, 201 Ill. 2d at 422. The court held that allowing plaintiffs to recover those damages in this action would, in effect, "constitute a double recovery." Robinson, 201 Ill. 2d at 422.

Robinson is inapposite to the case at bar, as it does not discuss the doctrine of election of remedies. Furthermore, although the Robinson court discusses double recovery, we note that there was no double recovery in this case. Rather, the final judgment against defendant consisted

of an award for actual damages and an award for attorneys' fees and additional costs. Defendant did not have to again pay actual damages under the Consumer Fraud Act, thereby preventing double recovery. As such, we find that trial court did not violate the doctrine of election of remedies and that the plaintiff did not receive a double recovery for her injury.

### E. Attorneys Fees

As a final note, plaintiff alleges that because she has incurred additional attorneys fees and costs defending the trial court's judgment in this appeal, we should allow plaintiff to file a supplemental fee petition in the trial court upon affirmance. See Check v. Clifford Chrysler-Plymouth of Buffalo Grove, Inc., 342 Ill. App. 3d 150, 166 (2003) (finding under the Magnuson-Moss Act (15 U.S.C. § 2301 et seq. (1994)) and the Consumer Fraud Act, the case should be remanded to the circuit court for plaintiff to petition for additional fees because she had to defend the judgment on appeal and remained the prevailing party). Accordingly, the case is remanded to the circuit court in order that plaintiff may petition for additional fees in accord with Check.

### III. CONCLUSION

For the reasons explained above, we affirm the judgment of the circuit court of Cook Court and remand for plaintiff to petition for additional fees.

Affirmed and remanded.

O'MARA FROSSARD and TOOMIN, JJ., concur.