No. 2-09-0594      Filed: 5-28-10

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| In re MARRIAGE OF WENDY STOCKTON, n/k/a Wendy Sharp, | ) ) ) | Appeal from the Circuit Court of De Kalb County. |
| Petitioner and Plaintiff-Appellant, | ) ) | |
| and | ) ) | No. 94--D--25 |
| JOHN STOCKTON, | ) ) | |
| Respondent | ) ) ) | |
| (Rockwell Trucking, Inc., and Mark Davis, Individually and as President of Rockwell Trucking, Inc., Defendants-Appellees). | ) ) ) ) | Honorable James Donnelly, Judge, Presiding. |

_____

JUSTICE JORGENSEN delivered the opinion of the court:

Petitioner-appellant Wendy Stockton and respondent John Stockton divorced in 1994. At that time, John was employed by defendant-appellee Rockwell Trucking, Inc. (Rockwell). In 1994, the court entered a withholding order under the Income Withholding for Support Act (Withholding Act) (750 ILCS 28/1 et seq. (West 2006)), mandating Rockwell to withhold $60 per week from John's income. John left Rockwell in June 1995. At that time, nine outstanding payments remained under the 1994 withholding order, totaling $540.

John returned to Rockwell in December 1997. On January 9, 1998, the court entered the withholding order at issue in this appeal (the 1998 withholding order), mandating Rockwell to withhold $120 per week from John's income. On March 31, 2000, John again left Rockwell. On

April 3, 2000, a week in advance of its April 11, 2000, due date, Rockwell submitted its last withheld payment under the 1998 withholding order. Although John again returned to Rockwell in 2002, this December 1997 to March 2000 employment term is at the center of the instant appeal.

On January 8, 2007, Wendy filed a complaint under the 1998 withholding order, alleging that Rockwell failed to withhold and submit payments in a timely manner, hence accruing a number of penalty days. Wendy further argued that at least one outstanding payment continued to cause penalty days to accrue. The parties disagreed as to whether one outstanding payment remained under the 1998 withholding order or whether, despite Rockwell's untimeliness, it had ultimately submitted all payments due and cured any arrearage under the 1998 withholding order. The cause of this disagreement was a "problematic line" on a printout from the State Disbursement Unit (SDU printout), which detailed a certain disbursement, listed as due January 5, 2000 (the contested disbursement). The trial court found that the record did not show that an outstanding payment remained under the 1998 withholding order (and implicitly found that penalties therefore did not continue to accrue beyond the term of John's employment), found that the last payment was made April 3, 2000, found that either a two-year or a five-year statute of limitations applied, and found that, therefore, Wendy's action was time barred. Wendy appealed. We affirm.

## I. BACKGROUND

Wendy and John were married in 1988. They had two children, Tiffany (born February 2, 1990) and Colton (born December 8, 1992). The parties divorced in 1994. Wendy was named the residential custodian and John was to pay child support. At the time, John was employed by Rockwell. Defendant-appellee Mark Davis was the president of Rockwell and was also John's brother-in-law. Aside from one contested payment to be elaborated below, the parties stipulate to

the following facts regarding John's employment with Rockwell and withheld payments by Rockwell to the State Disbursement Unit (SDU). The withheld payments were tracked by both the SDU (and information regarding the disbursements was contained in the SDU printout) and the De Kalb County clerk's office (and information regarding the disbursements was contained in the clerk's printout).

On July 1, 1994, Rockwell received via certified mail a withholding order requiring it to withhold $60 per week from John's paycheck. In June 1995, John left Rockwell. At that time, there were nine outstanding payments of $60, totaling $540, that had not been submitted by Rockwell to the SDU.

From June 1995 to December 1997, John worked for employers other than Rockwell, and these employers received new withholding orders.

In December 1997, John returned to Rockwell's employ after 2½ years. On January 9, 1998, Rockwell received a new withholding order, this time requiring it to withhold $120 per week from John's paycheck. John again left Rockwell's employ on March 31, 2000. During this two-year-plus employment term and under the 1998 withholding order, Rockwell paid a total of $13,800 to the SDU, with the last payment being submitted April 3, 2000.

From April 2000 to December 2002, John worked for at least three new companies, each of which received a new withholding notice. In December 2002, John again returned to Rockwell's employ, but Rockwell did not receive a new withholding notice. On September 20, 2005, Wendy filed a "petition for failure to withhold child support against Rockwell," alleging that Rockwell had failed to withhold income from John's paychecks since July 2004. Rockwell responded that it had never received a withholding order for the relevant employment term. Wendy initially argued that

the 1998 withholding order continued to be binding on Rockwell but, in May 2006, ultimately moved to voluntarily dismiss her action without prejudice and the trial court granted the motion. 735 ILCS 5/2--1009 (West 2006).

On January 8, 2007, Wendy filed a complaint for penalties under the 1998 withholding order, alleging that Rockwell failed to withhold and submit payments in a timely manner, hence accruing a number of penalty days beginning in 1998. The penalty system upon which Wendy's complaint relied works as follows. Under the Withholding Act, the payor-employer is subject to a $100 penalty for each day the amount designated in the withholding order is not paid. 750 ILCS 28/35(a) (West 2006). If two payments are outstanding, then the employer is subject to two $100 penalties for each day that both payments remain outstanding. In re Marriage of Miller, 227 Ill. 2d 185, 194 (2007).

On April 16, 2009, after several continuances and procedural motions, the parties presented written arguments to the court. The thrust of the parties' written arguments centered around whether one outstanding payment remained under the 1998 withholding order for the employment period of January 9, 1998, to March 31, 2000. According to the parties, if no outstanding payments remained, then 359 penalty days would have accrued by April 11, 2000, in the manner set forth above, and the penalty amount would be "locked in" at $35,900; however, if one outstanding payment remained, then penalty days continue to accrue. The parties then debated whether any statute of limitations applied to the action for penalties.

However, though she did not mention it in her complaint, Wendy also contested in her April 16, 2009, written argument that penalty days accruing from the nine outstanding payments under the 1994 withholding order should "carry over" to the 1998 withholding order, thereby resulting in multiple outstanding payments and causing 21,000 penalty days to accrue, for a total penalty amount

of $2.1 million. On this point, Rockwell responded that outstanding payments under the 1994 withholding order and the penalty days accruing therefrom at best gave rise to a separate cause of action and should not be considered in the instant cause, in which the complaint referenced only the 1998 withholding order and penalty days beginning in 1998.

At the hearing that same day, Wendy made concessions indicating that she no longer sought the trial court's consideration of whether obligations under the 1994 withholding order carried over to the 1998 withholding order, which would have caused multiple outstanding payments. The following exchange took place at the hearing:

"THE COURT: *** [L]et me back up a second. You're arguing about one payment?

ATTORNEY [for Wendy]: Yes, Your Honor."

Thereafter, the dispute at the hearing centered around whether Rockwell had made all of its required payments, late or not, under the 1998 withholding order, or whether one outstanding payment remained. The source of this dispute is one problematic line on the SDU printout. The SDU printout chronologically lists disbursements of withheld payments from October 8, 1999, to March 1, 2006. Each line in the SDU printout sets forth details of one disbursement from the SDU to Wendy. Specifically, each line sets forth the collection date (i.e., the due date), the date the SDU received the payment from John's employer, the date the SDU distributed the payment to Wendy, the payment and distribution amount, and the workgroup (or batch number).

The parties stipulated that, if the disbursement detailed in the problematic line was credited to Rockwell, then only 359 penalty days accrued under the 1998 withholding order for John's December 1997 to March 2000 employment term and no outstanding payments remain (scenario 1). The parties also stipulated that, if the disbursement detailed in the problematic line was not credited

to Rockwell, then 368 penalty days accrued under the 1998 withholding order for John's December 1997 to March 2000 employment term, one outstanding payment remains, and penalty days continue to accrue (scenario 2).

At the hearing, Rockwell argued that, under either scenario 1 (i.e., 359 penalty days and no outstanding payments) or scenario 2 (i.e., one outstanding payment with penalty days continuing to accrue), Wendy's claim was time barred. The Withholding Act does not set forth a statute of limitations. However, Rockwell contended that the statute of limitations is either: (1) two years under section 13--202 of the Code of Civil Procedure (the Code) (735 ILCS 5/13--202 (West 2006)) (setting forth a two-year statute of limitations for a statutory penalty); or (2) five years under section 13--205 of the Code (735 ILCS 5/13--205 (West 2006)) (setting forth a five-year statute of limitations for civil actions for which there is no other limitations period). Rockwell posited that the statute of limitations began to run the date the final withheld payment was due, April 11, 2000, and that the statute of limitations, therefore, lapsed April 11, 2005, at the latest.

Wendy responded that her action was not time barred under either scenario 1 or scenario 2, because either the limitations period for collecting child support is 20 years (citing 735 ILCS 5/13--218 (West 2006)) or there is no limitations period (citing 735 ILCS 5/12--108 (West 2006)). Alternatively, Wendy responded that, under scenario 2, none of the possible limitations periods could have begun to run because, due to the outstanding payment, Rockwell continued to accrue penalty days even after John left Rockwell, and, according to Wendy, the accrual of penalty days constituted a continuing violation that prevented the start of the limitations period.

On May 7, 2009, the trial court entered a written order, finding:

"A. From the records provided, it cannot be determined that the [disbursement detailed in the problematic line of the SDU printout] should not be credited to [Rockwell], and

B. There are two provisions of the Code of Civil Procedure that may contain a statute of limitations for this action--the 2-year statute of limitations in section 13--202 or the 5-year statute of limitations in section 13--20[5], and

C. [John's] last day of work was March 31, 2000 and the last payment by the defendants to the SDU was April 3, 2000, and

D. The earliest this action was filed was September 20, 2005.

Consequently, the Court holds that regardless of the statute of limitations applied, the instant action is barred."

Because the trial court did not find that an outstanding payment remained, it did not reach the analysis required by scenario 2 (i.e., a determination of when the statute of limitations began to run if there had been an outstanding payment and penalty days continued to accrue after John left Rockwell). Wendy appeals.

## II. ANALYSIS

Wendy argues that the trial court erred in "crediting" Rockwell with the disbursement detailed in the problematic line of the SDU printout. In this regard, Wendy challenges the trial court's finding "A," which stated: "From the records provided, it cannot be determined that the [disbursement detailed in the problematic line of the SDU printout] should not be credited to [Rockwell]." In other words, the trial court found that nothing in the record indicated that an outstanding payment remained under the 1998 withholding order.

Wendy initially complains that the trial judge applied the wrong standard of proof. She points to an isolated comment that the trial judge made at the hearing when he expressed his frustration with the SDU printout, stating he could not "absolutely conclude" that Rockwell failed to make a payment under the 1998 withholding order. Indeed, in an ordinary civil case, because there are no sound reasons for favoring one party over another, the party with the burden of persuasion must prove his case by a preponderance of the evidence. Hanson-Suminski v. Rohrman Midwest Motors, Inc., 386 Ill. App. 3d 585, 592 (2008). A proposition proved by a preponderance of the evidence is one that has been found to be more probably true than not true. Hanson-Suminski, 386 Ill. App. 3d at 592. Here, upon review of the entire record, we conclude that the trial court applied the correct standard of proof. See In re Marriage of Rizzo, 95 Ill. App. 3d 636, 644-45 (1981) (trial court's isolated statement that the children at issue were of tender years did not mean that the trial court improperly invoked the tender-years doctrine rather than the best-interest standard when making its custody decision). The trial court's written order is consistent with adherence to the preponderance-of-the-evidence standard, where it essentially stated that nothing in the record indicated that an outstanding payment remained under the 1998 withholding order.

In any case, the general standard of review where the evidence before the trial court consisted of documents is that the court of review is not bound by the trial court's finding and may make an independent determination on the facts. Addison Insurance Co. v. Fay, 232 Ill. 2d 446, 453 (2009); Polo National Bank v. Lester, 183 Ill. App. 3d 411, 414 (1989). Where extrinsic evidence is introduced to aid in interpreting a document, the reviewing court will not reverse the trial court unless the trial court's determination is against the manifest weight of the evidence. Polo National Bank, 183 Ill. App. 3d at 414. Here, with little to no reliance on extrinsic evidence, the trial court

considered two documents in determining whether an outstanding payment remained under the 1998 withholding order: the SDU printout and the clerk's printout.

We agree that the records do not show any outstanding payment under the 1998 withholding order. Again, the SDU printout chronologically lists disbursements of withheld payments from October 8, 1999, to March 1, 2006. As noted, each line in the SDU printout sets forth details of one disbursement from the SDU to Wendy. Each line sets forth the collection date (i.e., the due date), the date the SDU received the payment from John's employer, the date the SDU distributed the payment to Wendy, the payment and distribution amount, and the workgroup (or batch number).

So, using the terminology the parties used in their briefs, a typical line in the printout looks like this:

| Due Date | Activity | Payment/Distribution Amount | Batch |
|----------|----------|------------------------------|-------|
| 11/26/1999 | Rec. from John 11/30/1999<br>Disb. to Wendy 11/30/1999 | $120/$120 | 17434 |

The information in this line shows that the payment due November 26, 1999, was made four days late, on November 30, 1999, but there is nothing about the information that makes one question the accuracy of the information itself.

In contrast, the problematic line in the SDU printout looked like this:

| Due Date | Activity | Payment/Distribution Amount | Batch |
|----------|----------|------------------------------|-------|
| 01/05/2000 | Rec. from John 1/09/2001<br>Disb. to Wendy 1/10/2001 | $120/$120   (Emphases added to the problematic portions.) | 194917 |

In order to understand why this line is problematic, we place it in the context it appeared on the SDU printout:

| Due Date | Activity | Payment/Distribution Amount | Batch |
|---|---|---|---|
| 12/24/1999 | Rec. from John 1/03/2000<br>Disb. to Wendy 1/04/2000 | $120/$120 | 30032 [5 digits] |
| 12/31/1999 | Rec. from John 1/08/2000<br>Disb. to Wendy 1/08/2000 | $120/$120 | 33988 [5 digits] |
| 01/05/20<u>00</u> | Rec. from John 1/09/200<u>1</u><br>Disb. to Wendy 1/10/200<u>1</u> | $120/$120 | <u>194917</u> [<u>6</u> digits] |
| 01/07/2000 | Rec. from John 1/11/2000<br>Disb. to Wendy 1/12/2000 | $120/$120 | 36278 [5 digits] |
| 01/14/2000 | Rec. from John 1/19/2000<br>Disb. to Wendy 1/19/2000 | $120/$120  (Emphases added to the problematic portions.) | 39502 [5 digits] |

The subsequent lines in the above-referenced sequence have due dates spaced approximately every seven days apart (January 21, January 28, February 4, February 10, February 18, February 25, March 3, March 10, March 17, March 24, and March 31, 2000), through John's last work date with Rockwell. The problematic line creates confusion because it does not fit in the sequence. For example: (1) the due date falls only two days prior to the next due date (which is strange because the other due dates in the sequence are spaced at weekly intervals); (2) the due date is January 5, 2000, but the payment date is January 10, 200<u>1</u> (which is strange because Rockwell continued to make payments after the January 5, 2000, due date but received credit for the subsequent due dates of January 7, 2000, January 14, 2000, January 21, 2000, <u>et cetera</u>, before receiving credit for the January 5, 2000, due date); and (3) the <u>six</u>-digit batch number falls out of sequence (which is noteworthy because if the problematic line were removed from the sequence, the remaining, <u>five</u>-digit batch numbers would fall in numerical order--30002, 33988, 36278, 39502, <u>et cetera</u>).

Wendy contends that the problematic line really should be placed farther up in the sequence, amidst payments made in late 2000 and early 2001, after John left Rockwell and began to work for a series of different employers:

| Due Date | Activity | Payment/Distribution Amount | Batch |
|---|---|---|---|
| 12/22/2000 | Rec. from John 12/27/2000<br>Disb. to Wendy 1/08/2000 | $360/$360 | 189626 [6 digits] |
| 01/05/200<u>0</u> | Rec. from John 1/09/200<u>1</u><br>Disb. to Wendy 1/10/200<u>1</u> | $120/$120 | <u>194917</u> [<u>6</u> digits] |
| 01/12/2001 | Rec. from John 1/17/2001<br>Disb. to Wendy 1/17/2001 | $120/$120 | 197779 [6 digits] |

(Emphases added to the problematic portions.)

That the problematic line should be inserted farther up in the sequence is supported by a corresponding printout from the De Kalb County clerk's office (again, clerk's printout). The clerk's printout details disbursements based on the date the payment was distributed to Wendy; it does not contain quite as much information as the SDU printout, though it details the same disbursements. The distribution sequence for early 2000 is as follows:

| Distribution No. | Date Check In/Out | Amount |
|---|---|---|
| 169 | 1/04/2000 | $120 |
| 170 | 1/08/2000 | $120 |
| 171 | 1/12/2000 | $120 |
| 172 | 1/19/2000 | $120 |

As Wendy notes, the information contained in the problematic line on the SDU printout does not appear in the clerk's printout sequence of payments distributed in early 2000. However, the clerk's printout sequence of distributions from early 2000, though it contains less information, does mirror the SDU printout sequence from early 2000, notwithstanding the problematic line. For

example, both printouts show that $120 payments were distributed to Wendy on January 4, January 8, January 12, and January 19, 2000.

The distribution sequence in the clerk's printout in late 2000 and early 2001 is as follows:

| Distribution No. | Date Check In/Out | Amount |
| --- | --- | --- |
| 204 | 12/28/2000 | $360 |
| 205 | 1/10/2001 | $120 |
| 206 | 1/17/2001 | $120 |

The information contained in the problematic line on the SDU printout does appear in the clerk's printout in early 2001. Both the SDU printout and the clerk's printout show that a $120 payment was distributed to Wendy on January 10, 2001.

It seems to us that the most likely explanation is that the "0" in the due date of January 5, 2000, is a typographical error. If the due date was instead January 5, 2001, then the problematic line would be removed from its current place in the sequence of payments made by Rockwell under the 1998 withholding order in late 1999 and early 2000, leaving the due dates evenly spaced at one week intervals, the distribution dates in chronological order, and the batch numbers in numerical order. The problematic line would be inserted farther up in the sequence, amidst payments due from subsequent employers in late 2000 and early 2001, with due dates, distribution dates, and batch numbers likewise falling into chronological and numerical order.

Wendy's position that the problematic line should be moved up in the sequence amidst payments due in late 2000 and early 2001, and, therefore, reflect a payment made by a subsequent employer, is inconsistent with her position that Rockwell was required to remit a payment on that date. In other words, it is unlikely that there ever was a January 5, 2000, due date under the 1998

withholding order for which Rockwell was accountable. If the problematic line assumed its place farther up in the sequence amidst the payments due in late 2000 and early 2001, it would not only tend to show that the payment should be attributed to an employer subsequent to Rockwell, but it would also tend to show that an employer subsequent to Rockwell was the obligated payor. If Rockwell was not the obligated payor, then it did not have an outstanding payment under the 1998 withholding order.

We understand that the parties set up an "either/or" stipulation for the court regarding the disbursement detailed in the problematic line: either the disbursement should be credited to Rockwell and no outstanding payments should be found to remain, or the disbursement should not be credited to Rockwell and one outstanding payment should be found to remain. However, the "stipulation" to either of two alternative scenarios does not restrict this court's analysis. It seems that there is at least one flaw in the parties' stipulation--their deduction that if the disbursement set forth in the problematic line is not credited to Rockwell, then one outstanding payment remains. It is also possible, as the record seems to indicate, that Rockwell was not responsible for that payment in the first place. The threshold question this case turns on is not whether the distribution in the problematic line should be credited to Rockwell, but whether the information contained in the problematic line indicates that an outstanding payment remains under the 1998 withholding order. It is the answer to this question that dictates the parameters of our statute-of-limitations analysis, and we conclude that no outstanding payment remains under the 1998 withholding order.

The Withholding Act does not set forth a statute of limitations for an action to collect an arrearage amount or for an action to collect penalties. We review de novo the application of a statute

of limitations, as it is a question of law. First Baptist Church of Lombard v. Toll Highway Authority, 301 Ill. App. 3d 533, 540 (1998).

Wendy argues that this court should apply the limitations period set forth for child support judgments. The applicable limitations period for child support judgments was first set forth in a 1997 amendment to section 12--108 of the Code, which now states in part that "[c]hild support judgments, including those arising by operation of law, may be enforced at any time." 735 ILCS 5/12--108 (West 2006); see Pub. Act 90--18, §90, eff. July 1, 1997.[1]

We agree with Rockwell that section 12--108 is not applicable, because this case does not involve a child support judgment. A court enters a child support judgment when it orders either or both parents owing a duty of support to a child to pay support for that child. 750 ILCS 5/505 (West 2006). Rockwell does not owe Wendy child support; John owes Wendy child support. Moreover, Wendy is not seeking arrearage plus interest, such as one might seek in an action to enforce a child support judgment; she is seeking statutory penalties under the Withholding Act.

---

[1]As an alternative, Wendy suggests that we apply a 20-year statute of limitations. Prior to July 1, 1997, the statute of limitations governing enforcement of a child support judgment required that an action be brought within 20 years (735 ILCS 5/13--218 (West 1996)). However, the July 1, 1997, amendment to section 12--108 of the Code, allowing child support judgments to be enforced at any time, is applied retroactively where the previously applicable 20-year statute of limitations has not run. In re Marriage of Davenport, 388 Ill. App. 3d 988, 993 (2009). Thus, if the statute of limitations governing child support judgments could be applied to the instant action, the relevant limitations period would be that set forth in section 12--108.

Rockwell argues that the statute of limitations is either: (1) two years under section 13--202 of the Code (735 ILCS 5/13--202 (West 2006)) ("Actions *** for a statutory penalty *** shall be commenced within 2 years next after the cause of action accrued"); or (2) five years under section 13--205 of the Code (735 ILCS 5/13--205 (West 2006)) ("all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued"). Although Wendy's action would be time barred under either limitations period, we find that the appropriate statute of limitations is two years.

A statutory provision provides for a "statutory penalty," requiring that an action for said penalty be commenced within two years after the action accrues, if it imposes automatic liability for a violation of its terms and the amount of the liability is predetermined by the act and imposed without actual damages suffered by the plaintiff. McDonald's Corp. v. Levine, 108 Ill. App. 3d 732, 738 (1982) (interpreting what is now section 13--202). Under a penal statute, liability is imposed automatically when a violation of the statute is established. McDonald's, 108 Ill. App. 3d at 738. The object of the statute is clearly to inflict punishment on the party violating it, though a remedy may likewise be afforded to those having an interest in observance of the statute. Superior Laundry & Linen Supply Co. v. Edmanson-Bock Caterers, Inc., 11 Ill. App. 2d 132, 133 (1956).

The $100-per-day liability at issue here is imposed automatically each day the amount designated in the withholding notice is not paid. See 750 ILCS 28/35(a) (West 2006). The $100-per-day amount is predetermined; it is not related to actual damages (e.g., arrearage plus interest). Therefore, the $35,900 is a "statutory penalty," such that an action for said penalty must commence within two years after the action accrues. See also Miller, 227 Ill. 2d at 194 (incidentally referring

to penalties imposed under section 35(a) of the Withholding Act as statutory penalties); Grams v. Autozone, Inc., 319 Ill. App. 3d 567, 571 (2001) (same).

Here, Rockwell accumulated a $35,900 statutory penalty for a series of late payments under the 1998 withholding order. Rockwell's last payment under the 1998 withholding order was due April 11, 2000, and no outstanding payments remained. The action had clearly accrued by this point. An action for a statutory penalty must be commenced within two years after the cause of action accrued. 735 ILCS 5/13--202 (West 2006). Here, Wendy did not file any action against Rockwell under the Withholding Act until September 20, 2005; she did not file an action against Rockwell pertaining specifically to penalties under the 1998 withholding order until January 8, 2007. Hence, Wendy's action is time barred.

Wendy also argues on appeal that the trial court erred in failing to find that the 9 remaining $60 payments under the 1994 withholding order "carried over" to the 1998 withholding order, thus resulting in 4½ outstanding $120 payments under the 1998 withholding order. First, we note that Wendy did not request in her complaint that penalty days from the 1994 withholding order carry over. On April 16, 2009, she raised this argument for the first time in a written argument submitted to the trial court. However, that same day, at the hearing, Wendy abandoned any hint of this argument, allowing the entire debate to center around the problematic line in the SDU printout and whether the problematic line indicated that one outstanding payment remained under the 1998 withholding order. The following exchange took place at the hearing:

> "THE COURT: *** [L]et me back up a second. You're arguing about one payment?
>
> ATTORNEY [for Wendy]: Yes, Your Honor.
>
> * * *

THE COURT: But my point is that I thought you were in agreement that if [the January 5, 2000, contested disbursement did not indicate an outstanding payment under the 1998 withholding order], [then] Rockwell has paid everything it's supposed to pay even though it didn't pay it on time.

ATTORNEY [for Wendy]: Correct.

THE COURT: And, therefore, there would be no penalties after the year 2000.

ATTORNEY [for Wendy]: Yes."

The question of whether obligations under the 1994 withholding order carried over to the 1998 withholding order was never decided by the trial court. Wendy cannot now claim that the trial court erred in failing to find that the 1994 obligations carried over where she effectively abandoned this argument at the hearing. Generally, an issue not presented before the trial court cannot be raised for the first time on appeal. Coleman v. Hinsdale Emergency Medical Corp., 108 Ill. App. 3d 525, 527 (1982).

In any case, our consideration of this issue on the merits would result in preservation of the trial court's ruling. Wendy does not present a compelling argument on appeal that obligations from the 1994 withholding order should carry over to the 1998 withholding order. First, cases Wendy cites address a single withholding order and do not touch upon the subject of two separate withholding orders served years apart upon the same employer. See Miller, 227 Ill. 2d at 188-192; Grams, 319 Ill. App. 3d at 568-69.

Second, "[n]ew service of an income withholding notice is not required in order to resume withholding of income in the case of an obligor with respect to whom an income withholding notice was previously served on the payor if withholding of income was terminated because of an

interruption in the obligor's employment of <u>less than 180 days</u>."  (Emphasis added.)  750 ILCS 28/20(i) (West 2006).  Here, John left Rockwell in June 1995.  Because John did not return to Rockwell's employ within 180 days, the 1994 withholding order was no longer in effect.  Upon John's return to Rockwell over two years later, Rockwell was served with a new withholding order, which contained a new amount to be withheld.

Wendy's argument that obligations under the 1994 withholding order should carry over to the 1998 withholding order functions as an alternative argument that outstanding payments remain under the 1998 withholding order, and it is not successful.  Wendy needed to establish that an outstanding payment remained in order for this court to consider her argument that the outstanding payment continues to accrue penalties and, therefore, prevents the statute of limitations from running.  However, because no outstanding payments remain on the 1998 withholding order, we leave for another court to determine the effect on the statute of limitations of an outstanding payment that continues to accrue penalties.

### III. CONCLUSION

For the aforementioned reasons, the judgment of the circuit court of De Kalb County is affirmed.

Affirmed.

McLAREN and BOWMAN, JJ., concur.